## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **GODFREY JAYSON REDDICK, on behalf of himself, individually, and on behalf of all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 16-CV-9959** |
| **SYMPHONY DIAGNOSTIC SERVICES NO. 1, INC., d/b/a MOBILEXUSA, LLC, AMERICAN DIAGNOSTICS SERVICES, INC., and TRIDENTUSA MOBILE CLINICAL SERVICES, LLC** | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## PARTIES' JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT, SERVICE AWARD AND ATTORNEYS' FEES AND COSTS

**ATTORNEYS FOR PLAINTIFFS:**

Andrew C. Ficzko
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, Illinois 60601
312.233.1550
312.233.1560 (fax)
lawyers@stephanzouras.com

**ATTORNEYS FOR DEFENDANTS:**

Larry Besnoff
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
215.665.3126
larry.besnoff@obermayer.com

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. iii

INTRODUCTION ............................................................................................................... 1

  FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 1

    I.    Factual Allegations ................................................................................................ 1

    II.   Overview of Investigation, Litigation and Settlement Negotiations ............................. 2

  SUMMARY OF THE SETTLEMENT TERMS ................................................................. 4

    I.    The Settlement Fund ............................................................................................. 4

    II.   Eligible Employees ............................................................................................... 4

    III.  Claim Procedure ................................................................................................... 5

    IV.  Release ................................................................................................................. 5

    V.   Allocation Formula ............................................................................................... 6

    VI.  Service Award ....................................................................................................... 6

    VII. Settlement Claims Administration ......................................................................... 6

    VIII.  Attorneys' Fees and Litigation Costs ................................................................. 7

  ARGUMENT ..................................................................................................................... 8

    I.    Approval of the FLSA Settlement Is Appropriate ..................................................... 8

    II.   The Settlement Is Fair and Reasonable and Should Be Approved ............................... 9

    III.  The Service Award to Plaintiff Should Be Approved as Fair and Reasonable ........... 12

    IV.  Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable .................. 15

        A.   An Award of Fees and Costs Is Mandatory ........................................................ 16

        B.   The "Lodestar" Method Is Used to Determine Attorney Fees in Wage Cases ....... 16

          1.   Hours reasonably expended ......................................................................... 17

          2.   Reasonable hourly rates ............................................................................. 17

          3.   Plaintiffs' counsel lodestar ......................................................................... 18

        C.   No downward adjustment is warranted ............................................................... 18

          1.   Results obtained ......................................................................................... 19

          2.   Time and labor required ............................................................................. 19

          3.   Novelty and difficult issues ........................................................................ 20

          4.   Skill required to perform legal services properly ........................................... 20

5.   Preclusion of other employment ........................................................ 20

6.   Customary fee .................................................................................... 21

7.   Whether the fee is fixed or contingent .............................................. 21

8.   Time limitation imposed by clients or circumstances ....................... 21

9.   Experience, reputation, and ability of attorneys............................... 21

10.  Undesirability of the case ................................................................. 21

11.  Nature and length of professional relationship with clients.............. 22

12.  Awards in similar cases ..................................................................... 22

13.  Public purpose served........................................................................ 22

CONCLUSION .......................................................................................................... 23

# TABLE OF AUTHORITIES

Cases                                                                  Page

*Alcantara v. Oscar Jurado d/b/a Jurado's Decorating*, Case No. 07 C 1865 (November 26, 2007) ............................................................................................................. 18

*Am. Int'l Grp., Inc., v. ACE INA Holdings, Inc.*, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) 13

*Beasley v. Int'l Paper Co.*, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ........................................ 14

*Blum v. Stenson*, 465 U.S. 886 (1984)....................................................................................... 16

*Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010) ................... 9

*Butler v. Am. Cable & Tel., LLC*, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) ........ 9

*Chesemore v. Alliance Holdings, Inc.*, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014) .......... 13

*City of Burlington v. Dague*, 505 U.S. 557 (1992) .................................................................... 16

*Cole v. DKMB, Inc.*, Case No. 06 C 0719 (August 27, 2007) ..................................................... 18

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ................................................................. 12, 13

*Dawson v. Pastrick*, 600 F.2d 70 (7th Cir. 1979) ..................................................................... 10

*Diaz v. Reidesigne Landscape Contractors, Inc.*, Case No. 06 C 0720 (January 23, 2008) ........ 17

*Ellenbecker v. North Star Cable Construction, Inc. et al.*, Case No. 09-cv-7293 (N.D. Ill.) ....... 22

*Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770 (7th Cir. 2013).............................. 8, 13, 14

*Evans v. Jeff D.*, 475 U.S. 717 (1986) ...................................................................................... 15

*Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) ................................................................. 16, 19

*Fields v. Luther*, 1988 WL 121791 (D. Md. July 12, 1988) ..................................................... 19

*Flowers v. City of Minneapolis*, 2008 WL 927940 (D. Minn. April 7, 2008) ............................ 17

*Follansbee v. Discover Fin. Servs., Inc.*, 2000 WL 804690 (N.D. Ill. June 21, 2000) .......... 13

*Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, 2013 WL 5745102 (W.D. Wis. Oct. 23, 2013)....................................................................................................................................... 9

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ............................................ 12

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013)................................................. 8

*Griffin v. Jim Jamison, Inc.*, 188 F.3d 996 (8th Cir. 1999) ........................................................ 17

*Guippone v. BH S & B Holdings, LLC*, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011)............... 14

*Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388 (N.D. Ill. 2011) ....................... 13

*Heba, et. al. v. Comcast Corp., et al.*, Case No. 000471 (April 6, 2016) .................................... 22

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................ 16, 17, 189

*Hixon v. City of Golden Valley,* 2007 WL 4373111 (D. Minn. Dec. 13, 2007)................ 16, 18

*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ........................................................ 9

*Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880 (S.D. Ohio May 24, 2013) ........... 14

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) . 9, 14

*Land v. Frontline Communications, et al.*, Case No. 10-cv-7640 (N.D. Ill) ............................... 22

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2001 WL 1403007 (N.D. Ill. Nov. 7, 2001) 8

*Lynn's Food Stores, Inc. v. Dep't of* Labor, 679 F.2d 1350 (11th Cir. 1982) ................ 8, 9, 10

*Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)....... 13

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ........................................... 9

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .. 15

*Prena v. BMO Fin. Corp.*, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ................................... 9

*Roberts v. Apple Sauce, Inc.*, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014) ........................... 9

*Robles v. Boss Construction Inc.*, case No. 07 C 3785 (November 29, 2007) ............................ 18

*Roussel v. Brinker Intern., Inc.*, 2010 WL 1881898 (S.D.Tex. Jan. 13, 2010)........................ 17

*Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)........................ 14

*Shaukat v. Wireless 4 U, Inc.*, Case No. 06 C 4214 (July 29, 2008) ........................................... 18

*Singer v. City of Waco*, 324 F.3d 813 (5th Cir. 2003) ................................................ 19

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp.2d 665 (D. Md. 2013) ....................... 14

*Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702 (7th Cir. 2001) ...................... 16

*Sukhnandan v. Royal Health Care of Long Island LLC,* 2014 WL 3778173 (S.D.N.Y. July 31, 2014) ............................................................................................................... 14

*Valencia v. Domenic Vitro d/b/a Classic Creations Landscape*, Case No. 07 C 0551 (November 2, 2007) ................................................................................................ 18

*Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ............... 12

*Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir. 1986) .................................... 8

*West v. Border Foods, Inc.*, 2007 WL 1725760 (D. Minn. June 8, 2007) .............................. 17

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997) ..................... 15

<u>Statutes</u>

29 U.S.C. § 216(b) ............................................................................................... 8, 15, 16, 23

29 U.S.C. §207(a) ................................................................................................................. 10

29 C.F.R. §778.101 ............................................................................................................... 10

820 ILCS § 105/4(a) ..................................................................................................... 16, 23

## INTRODUCTION

Plaintiff, Godfrey Jayson Reddick, individually and on behalf of all other eligible opt-in Plaintiffs (collectively "Plaintiffs"), and Defendants, Symphony Diagnostic Services No. 1, LLC, d/b/a MobilexUSA, American Diagnostics Services, Inc. and TridentUSA Mobile Clinical Services, LLC (collectively "Defendants"), have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis. The settlement, which followed a thorough investigation, motion practice, and the exchange and review of relevant documents, satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona-fide dispute, was a result of arm's-length settlement negotiations by experienced counsel, and provides good value to the workers whom it will benefit.

The Parties respectfully request an order: (1) granting final approval of the Settlement Agreement and Release ("Settlement Agreement") attached hereto as Exhibit A; (2) approving a service award of $10,000.00 to the Named Plaintiff; (3) approving Plaintiffs' request of $69,123.00 in attorneys' fees and costs; (4) approving the $5,500.00 in administration fees and costs; and (5) incorporating the terms of the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual Allegations

Plaintiffs are current and/or former employees of American Diagnostics Services, Inc. in Illinois and/or Wisconsin as mobile ultrasound technologists, sonographers, ultrasound technicians, or any other similarly-titled position at any time from October 2013 to April 6, 2017. Plaintiffs allege they were required, encouraged and permitted to work before and after their scheduled shifts: checking and reviewing their daily assignments; mapping routes from their home to their first assignment; loading and unloading their vehicle with the ultrasound

machinery and other equipment; pre-calling patients; providing estimated times of arrival; filling out timesheets; completing patient care documentation and uploading the documents to the server; learning protocols; maintaining company vehicles; and performing other work that was not recorded or paid. Defendants deny that they committed any wrongdoing or violated any federal, state or local laws pertaining to payment of wages and hours worked and vigorously disputed the claims asserted in the litigation.

## II. Overview of Investigation, Litigation and Settlement Negotiations

Before the initiation of this action, Plaintiffs' Counsel, with the assistance of Mr. Reddick, conducted a thorough investigation into the merits of the potential claims and defenses. (Exhibit B – Andrew C. Ficzko Declaration at ¶7). Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of the potential class and collective action members' claims, the potential damages to which they may be entitled, and the propriety of collective and class action certification. (*Id.* at ¶8). Plaintiffs' Counsel obtained and reviewed documents from the Named Plaintiff including pay records, timesheets, emails, text messages and other relevant documents. (*Id.* at ¶9).

After completing their initial investigation, on October 24, 2016, Named Plaintiff filed the original complaint[1] as a collective action pursuant to the FLSA and as a class action under Federal Rules of Civil Procedure 23 and the Illinois Minimum Wage Law ("IMWL") against Defendants, alleging he, as well as other similarly-situated employees, were not paid for all actual hours worked, including overtime for time worked in excess of forty (40) hours per week. Plaintiff sought unpaid wages, including overtime, liquidated damages, statutory

---

[1] On November 9, 2016, Plaintiff filed an amended Collective and Class Action Complaint correcting the name of Defendant TridentUSA Mobile Clinical Services, LLC which was previously identified as TridentUSA Health Services, LLC. *See* Dkt. No. 4.

penalties, attorneys' fees and costs, and other relief. *See* Dkt. No. 1.

On November 15, 2016, Defendants made a Rule 68 Offer of Judgment. *See* Dkt. No. 7. That same day, Defendants also filed a Motion to Deposit Funds. *See* Dkt. No. 9. On November 21, 2016, Plaintiffs filed a Motion for Conditional Certification and Request for Discovery on Certification Issues. *See* Dkt. No. 15. On December 2, 2016, Plaintiff filed a response in opposition to Defendants' Motion to Deposit Funds. *See* Dkt. 22. However, on December 8, 2016, Defendants filed a Motion to Withdraw Their Pending Motion to Deposit Funds (*see* Dkt. No. 25) which was granted on December 13, 2016. *See* Dkt. No. 27. Finally, on January 11, 2017, the Parties filed a Joint Motion to Stay All Proceedings to Allow Settlement Discussions. *See* Dkt. No. 33. This court granted the Joint Motion to Stay on January 17, 2017. *See* Dkt. No.35.

The Parties, who are represented by experienced counsel, engaged in comprehensive settlement discussions to narrow the disputed issues, agree upon a reasonable gross settlement amount, and formulate a plan for allocation. While Plaintiff believed his claims for unpaid wages were strong, he recognized that a complete victory on every aspect of his claims, including the proper measure of damages, was far from certain. The Parties also took into account the costs and risks associated with further litigation, and the benefits, certainties and judicial economies associated with resolving a complex case before dispositive motion practice and possible trial. As a result, the Parties concluded, based on their investigation conducted in this case, the expense and time necessary to prosecute the lawsuit through trial, the risks and costs of further prosecution of the lawsuit, the uncertainties of complex litigation, and the substantial benefits to be received pursuant to a settlement, that a settlement on an opt-in basis is fair, reasonable, and adequate, and in the best interests of the Parties.

On March 16, 2017, the Parties informed the Court that they reached a tentative settlement. On April 7, 2017, the Parties filed a Joint Motion for Preliminary Approval of Settlement and for Notice to the Class. *See* Dkt. No. 41. On or about April 11, 2017, the Court granted the Parties' Joint Motion for Preliminary Approval (*see* Dkt. No. 45) and notice was sent soon thereafter to all potential collective members informing them of the pending lawsuit and settlement thereof. On April 21, 2017, the Court set a final fairness hearing scheduled for July 10, 2017. *See* Dkt. No. 50.

**SUMMARY OF THE SETTLEMENT TERMS**

### I.   **The Settlement Fund**

According to the terms and conditions of the Settlement Agreement, the Defendants have agreed to pay up to $150,000.00 (the "Settlement Amount") to satisfy: (1) all settlement payments; (2) court-approved attorneys' fees and costs in the amount of $69,123.00; (3) all fees and costs of the settlement administrator in administering the settlement in the amount of $5,500.00; and, (4) the service payment to the Named Plaintiff in the amount of $10,000.00.

### II.   **Eligible Employees**

Defendants will make a settlement payment to each individual who chooses to opt into the settlement. Payments will be allocated based on the number of weeks each respective individual worked for American Diagnostics Services, Inc. in Illinois and/or Wisconsin as a mobile ultrasound technologist, sonographer, ultra sound technician, or any other similarly-titled position from October 2013 to April 6, 2017. In addition to the Named Plaintiff, five

4

individuals chose to opt-in and participate in the settlement.[2]  Each individual who chose to opt-in to participate in the settlement will receive $22.18 for each week they worked during the relevant period of time.

## III.  <u>Claim Procedure</u>

The Parties agreed to cooperate in the settlement administration process and made all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the settlement.  After this Court granted preliminary approval of the settlement, Defendants promptly provided the settlement administrator and Plaintiffs' Counsel with a list of the twenty-two potential collective members and their last known addresses according to Defendants' business records.  On April 28, 2017, the settlement administrator sent the court-approved Notice ("Notice") to the twenty-two eligible collective members via USPS First Class U.S. Mail informing them of the terms of the settlement, the settlement allocations and the scope of the release.  (Exhibit C – Dahl Declaration at ¶6).  The settlement administrator took all reasonable steps to obtain correct addresses of any collective members for whom a Notice was returned undeliverable and made all reasonable attempts to ensure that the Notice was successfully delivered.  (*Id.* at ¶7).  Eligible collective members had forty-five days to opt-in and participate in the settlement.

## IV.  <u>Release</u>

Each collective member who chose to participate in the settlement and opted in to the case is deemed to fully and finally release and discharge the Defendants and their predecessors,

---

[2] The total possible collective consisted of twenty-three individuals (including the Named Plaintiff) who were employed, or are currently employed, by American Diagnostics Services, Inc. in Illinois and/or Wisconsin from October 2013 to April 6, 2017.

successors, and assigns, their current and former direct and indirect parents, affiliates, subsidiaries, divisions, and related business entities, and their current and former officers, directors, shareholders, employees, agents and representatives from claims under the FLSA, IMWL, and/or Wisconsin wage and hour laws for any wage violations for time worked from October 2013 to April 6, 2017. The release is limited solely, and only, to those collective members who opted in to the lawsuit and chose to participate in the settlement. All individuals who chose not to opt-in to the lawsuit retain all legal rights to pursue their own independent action against any of the Defendants.

## V.    Allocation Formula

Each individual who chose to opt-in to participate in the settlement will receive $22.18 for each week they worked during the relevant period of time. *See* Exhibit D – Damages Chart. For tax purposes, 50% of the payments to each participating opt-in collective member will be treated as back wages, subject to payroll taxes and withholdings, and 50% will be treated as interest, any applicable penalties, liquidated damages and other non-wage relief, which shall not be subject to required withholdings and deductions and shall be reported as non-wage income as required by law.

## VI.    Service Award

The Settlement Agreement provides that, with Court approval, the Named Plaintiff will receive a $10,000.00 service award in recognition of assistance rendered in obtaining the benefits of the settlement for the collective members as well as the risks he took to do so.

## VII.    Settlement Claims Administration

The Parties retained Dahl Administration, LLC ("Dahl"), a wage and hour settlement

6

administrator, to serve as the settlement administrator. (*See* Exhibit C at ¶1). After entry of the Order granting preliminary approval, pursuant to the terms of the Settlement Agreement, the Parties directed Dahl to issue Notice to the eligible collective members by means approved by the Court and agreed to by the Parties in the Settlement Agreement. Upon receipt of the list of all potential collective members eligible to participate in the settlement, Dahl reviewed the list for any duplicative records with incomplete addresses. *Id*. at ¶4. Dahl worked with counsel for both Parties to format the Notice into a format suitable for mailing and on April 28, 2017, mailed the Notices via USPS First Class U.S. Mail to the twenty-two eligible collective members. *Id*. at ¶¶5-6. As of June 24, 2017, the USPS returned 2 Notices as undeliverable from the initial mailing without forwarding addresses. *Id*. at ¶7. The address records were then sent to a professional address location service for address tracing. *Id*. After the tracing was completed, 1 updated address was secured and a Notice was re-mailed to the new address. *Id*. As of June 24, 2017, no Notices were returned as undeliverable from the initial mailing with forwarding addresses. *Id*. at ¶8. After tracing and re-mailing undeliverable Notices, a total of 21 or 94.45% of the 22 Notices were successfully mailed to eligible collective members. *Id*. at ¶9. As of June 24, 2017, Dahl received 5 opt-in claim forms. *Id*. at ¶10. Of the 5 opt-in claim forms received, one was submitted without a completed W9 or W4 form. *Id*. A cure letter was sent to this individual on June 26, 2017, requesting this information. *Id*. The overall claim filing rate is 22.73%. *Id*. Dahl's fees of $5,500.00 for administration of the settlement will be paid from the Settlement Amount.

## VIII.    <u>Attorneys' Fees and Litigation Costs</u>

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel will receive $69,123.00 which represents a portion of their total lodestar for time worked on the

case and out-of-pocket costs incurred in litigating and resolving this matter. (*See* Exhibit B at ¶10).

## ARGUMENT

### I. Approval of the FLSA Settlement Is Appropriate

In the Seventh Circuit, settlements of FLSA claims must be approved by a Court of competent jurisdiction. *See, e.g., Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. Dep't of* Labor, 679 F.2d 1350, 1352-53 (11th Cir. 1982)); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001). An employee may compromise a claim under the FLSA pursuant to a court-authorized settlement of an action alleging a violation of the FLSA. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355. When reviewing a proposed FLSA settlement, the district court must scrutinize the settlement for fairness and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355. If a settlement in an employee FLSA suit reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

Unlike Rule 23 class actions, collective actions under Section 216(b) of the FLSA do not implicate the same due process concerns. Collective actions under Section 216(b) require individuals to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770, 771-72 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Under the FLSA,

"parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Beckman v. Keybank, N.A.,* 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *see also Woods v. N.Y. Life Ins. Co*., 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016). There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it. *See Prena v. BMO Fin. Corp.*, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015); *Woods*, 686 F.2d at 580 ("The difference between a Rule 23 class action and section 16(b) class action is . . . that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound.").

## II.    <u>The Settlement Is Fair and Reasonable and Should Be Approved</u>

The Court has a duty to "determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011).

Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See, e.g., Lynn's Food Stores, Inc.*, 679 F.2d 1350, 1355; *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, 2013 WL 5745102, at *1 (W.D. Wis. Oct. 23, 2013); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010); *see also Butler*, 2011 WL 4729789, at *8. If the proposed settlement reflects

9

a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts v. Apple Sauce, Inc.*, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014). "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

The settlement in this case easily meets the standard for approval. The settlement reached by the Parties represents a fair, just and reasonable resolution of the claims alleged by Plaintiff under the FLSA and any remaining disputes between the Parties. The agreement reached is the result of extensive negotiations between the Parties to resolve this matter. The settlement figures agreed upon bear a reasonable and fair relationship to the amounts alleged by Plaintiff, and also take into account the specific risks and uncertainties associated with this litigation. The Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients.

The settlement of the instant action involves a *bona fide* dispute. The FLSA requires payment of all earned wages, including overtime compensation for all hours worked in excess of 40 hours per week. 29 U.S.C. §207(a); 29 C.F.R. §778.101. Plaintiff claims that Defendants violated the FLSA and IWML by failing to pay him and other mobile ultrasound technologists, sonographers, ultrasound technicians and other similarly-titled positions for all work they were required or suffered to perform, including overtime compensation for all hours worked in excess of 40 hours per work week. Defendants denied the allegations. Defendants assert that Plaintiff maintained his own time records, submitted weekly time records, attesting to their accuracy, and was properly paid for all hours worked, including overtime. Defendants assert that travel time to and from work is not compensable. Defendants maintained that they provided sufficient payment to Plaintiff and all others similarly situated to him. Had Plaintiff

prevailed on his motions for conditional certification, class certification, and summary judgment or at trial, Defendants would ultimately be faced with a monetary decision in favor of Plaintiff, as well as an obligation to pay legal fees and costs incurred. If Defendants prevailed, Plaintiff would not recover any damages or attorneys' fees and costs, and Defendants would seek the recovery of certain statutory costs. In sum, the Court could have ruled for or against either side, or find that disputed factual issues were present necessitating a trial.

The settlement is also fair and reasonable and meets all applicable factors considered by courts. The settlement is especially appropriate at this stage of the proceedings. Aside from Plaintiffs' independent investigation, the Parties have exchanged and reviewed documents relating to policies and procedures, payroll and time keeping data, other electronically stored information (ESI), and other information. The Parties engaged in a substantial investigation, which included remaining abreast of any changes in this ever-evolving and highly-nuanced area of the law. Plainly, the Parties had more than sufficient information to assess the risks of assessing liability and damages.

Furthermore, the settlement is well within the range of possible recovery. As in all wage and hour claims, particularly in the collective action context, the nature and amount of recoverable damages was uncertain. Even if a trier of fact ultimately found liability, a range of possible damages existed depending on factors including, but not limited to, the parties and their witnesses' credibility, the limitations in the available data tracking work performed, the applicable statute of limitations, and Defendants' knowledge, willfulness and good faith. Taking these considerations into mind, the amount of the settlement is appropriate in relation to the potential recovery and risks.

11

Finally, the proposed allocation of the settlement also is reasonable. *See* Exhibit D – Damages Chart. It reflects a proportion of damages owed to eligible individual opt-in Plaintiffs based on the number of weeks they worked for American Diagnostics Services, Inc. during the relevant period of time, which is a reasonable approximation of each eligible opt-in Plaintiffs' damages, given the evidence that these individuals tended to work similar hours. Thus, based on the aforementioned factors, the Parties conclude that a settlement on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, in the best interest of the Parties, and not worth the costs and risks associated with a trial.

### III. The Service Award to Plaintiff Should Be Approved as Fair and Reasonable

The Named Plaintiff requests approval of a service award in the amount of $10,000.00. The service award requested is reasonable given the significant contributions he made to advance the prosecution and resolution of the lawsuit. Named plaintiffs in collective action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotation marks omitted)).

Service awards serve the important purpose of "compensate[ing] plaintiffs for the time

12

and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *see also Espenscheid*, 688 F.3d at 876-77; *Cook*, 142 F.3d at 1016; *cf. Follansbee v. Discover Fin. Servs., Inc.*, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing incentive awards' importance). Service awards are commonly awarded to those who serve the class's interest. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc., v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). Here, the Named Plaintiff satisfies all three factors.

First the Named Plaintiff took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit. He participated in an extensive pre-suit investigation, traveled to Chicago for several in-person meetings, provided documents crucial to establishing the claims asserted, and generally devoted personal efforts to help achieve a significant result for the collective members who chose to participate in the settlement. Courts in this Circuit and others have approved comparable incentive awards for similar activities. *See, e.g., Chesemore*, 2014 WL 4415919, at *5, *12 (approving $10,000.00 and $25,000.00 awards for, *inter alia*, submitting to discovery and participating in

13

settlement discussions and noting that courts in the Seventh Circuit routinely approve incentive awards ranging from $5,000.00 to $25,000.00).[3]   These actions have resulted in substantial benefit to the collective members who chose to participate in the settlement, leading to a recovery of $22.18 for each week they worked during the relevant period of time.

Second, the Named Plaintiff undertook substantial direct and indirect risk.  He agreed to bring the action in his name, participate in discovery, including sitting for a deposition, and to testify if there was a trial.  In doing so, he assumed significant risk that "should the suit fail, [he could] find [himself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for defendant's attorneys' fees."  *Espenscheid,* 688 F.3d at 876-77 (internal citations omitted).  "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks."  *Id.*; *accord Koszyk*, 2016 WL 5109196, at *3.

Although the Named Plaintiff was no longer employed by Defendants when he initiated the lawsuit, he merits recognition for risking retaliation from future employers for the benefit of all collective members who opted in to participate in the settlement.  *See Beasley v. Int'l Paper Co.*, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (recognizing that suits against former employers carry risks of professional and personal repercussions); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp.2d 665, 691 (D. Md. 2013) (noting that plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against a prior employer); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees . . . fac[e] potential risks of being blacklisted as 'problem' employees."); *Guippone v.*

---

[3] *See also Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880, at *5-6 (S.D. Ohio May 24, 2013) (approving a service award of $12,500 for the actions and efforts of the named plaintiff in securing other class members' recoveries, which ranged from $260.00 to $1,000.00 and were allocated from a gross settlement fund of $452,380); *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 WL 3778173, at *16 (S.D.N.Y. July 31, 2014) ($10,000.00 awards where, *inter alia*, "[p]laintiffs provided counsel with relevant documents . . . [and] assisted counsel in preparing for mediation and settlement discussions").

*BH S & B Holdings, LLC*, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("[F]ormer employees put in jeopardy their ability to depend on the employer for references[.]").

Third, the Named Plaintiff spent a significant amount of time and effort pursuing this litigation on behalf of all eligible opt-in collective members who joined the case. This includes the time and effort he expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, the time and effort he spent assisting in the preparation and review of the complaint, securing and producing documents crucial to establishing the claims asserted, and his overall general devotion to help achieve a significant result for the eligible collective members.

## IV.    Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable

When fee-shifting statutes such as the FLSA are involved,[4] parties may negotiate settlements that encompass a defendant's total liability for damages, attorney fees and costs. *See Evans v. Jeff D.*, 475 U.S. 717, 733-34, 738 n.30 (1986); *see also Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorney's fees."). In this case, the Parties negotiated a settlement which capped Defendants' total obligation for settlement payments to Plaintiffs, costs of Notice and settlement administration, separate service award to the Named Plaintiff, and court-approved attorneys' fees and costs. As contemplated by the Settlement Agreement, as stated in the court-approved Notice,

---

[4] The FLSA provides that the court "**shall**, in addition to any judgment awarded to the plaintiff of plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of action." 29 U.S.C. § 216(b) (emphasis added).

Plaintiffs now seek the Court's approval of attorneys' fees and costs in the amount of $69,123.00. As discussed below, the amount requested for attorney fees is less than the fees actually incurred by Plaintiffs' counsel.

## A. An Award of Fees and Costs Is Mandatory

As a threshold matter, an award of fees and costs to prevailing Plaintiffs under the FLSA and IMWL is mandatory.[5] *See* 29 U.S.C. § 216(b) (the court "shall, in addition to any judgment awarded to the plaintiffs or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of action."); 820 ILCS § 105/4(a) (comparable fee-shifting provision under Illinois wage law). Accordingly, Plaintiffs are entitled to reimbursement of fees and costs.

## B. The "Lodestar" Method Is Used to Determine Attorney Fees in Wage Cases

One way to determine "reasonable" awards in FLSA and IMWL cases is for the courts to use the "lodestar" method. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001). The lodestar method involves calculating the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate. *Small*, 264 F.3d at 707; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "There is a 'strong presumption' that the lodestar figure represents the reasonable fee to be awarded." *Hixon v. City of Golden Valley,* 2007 WL 4373111, at *2 (D. Minn. Dec. 13, 2007) (*quoting City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Nevertheless, adjustments to the lodestar sum "may be made as necessary in the particular case." *Blum v. Stenson*, 465 U.S. 886, 888 (1984).[6]

---

[5] The purpose of mandatory fee awards under the FLSA is to help ensure that Plaintiffs with wage and hour grievances have "effective access to the judicial process[.]" *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (internal citation omitted).

[6] A variety of factors may be considered in making adjustments to the lodestar figure, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5)

### 1. Hours reasonably expended

Counsel must use "billing judgment" by making good-faith efforts to exclude from a fee request, hours that are "excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434. Plaintiffs' counsel have made good-faith efforts to use good billing judgment by taking several steps to exclude any hours that might be excessive, redundant, or otherwise unnecessary. Exhibit B at ¶12.

Even after eliminating all of the hours described above, Plaintiffs' Counsel and non-lawyer billing staff have worked more than 232.9 hours litigating, settling and administering the settlement of this case for Plaintiffs' benefit. (*Id.* at ¶¶11-13). Further, Plaintiffs' Counsel will necessarily continue expending time implementing the settlement and in connection with distribution of the settlement funds.

### 2. Reasonable hourly rates

The hourly rates of Plaintiffs' counsel and each non-lawyer billing staff member for whom time is submitted are set forth in Exhibit 1 of Exhibit B. The hourly rates have been accepted and approved in other contingent litigation and are comparable to rates charged by class action counsel in similar cases. (*Id.* at ¶14). *See also Roussel v. Brinker Intern., Inc.*, 2010 WL 1881898, at *3 (S.D.Tex. Jan. 13, 2010) (approving $500 and $450 hourly rates in FLSA case); *West v. Border Foods, Inc.*, 2007 WL 1725760, at *2 (D. Minn. June 8, 2007) (approving $550 and $400 hourly rates in FLSA case).

---

the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesireability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases; (13) the significance of the legal issue on which the plaintiff prevailed; and (14) the public purpose served. *Flowers v. City of Minneapolis*, 2008 WL 927940, at *2 (D. Minn. April 7, 2008). However, it is not necessary for the Court to explicitly examine all of these factors in determining reasonable attorney fees. *Id.*, *citing Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997 (8th Cir. 1999).

Moreover, the Northern District of Illinois has awarded hourly rates similar to what is requested here in other wage and hour cases. *See Shaukat v. Wireless 4 U, Inc.*, Case No. 06 C 4214 (July 29, 2008) (awarding $500 per hour); *Diaz v. Reidesigne Landscape Contractors, Inc.*, Case No. 06 C 0720 (January 23, 2008) (awarding $475 per hour); *Robles v. Boss Construction, Inc.*, Case No. 07 C 3785 (November 29, 2007) (awarding $450 per hour); *Alcantara v. Oscar Jurado d/b/a Jurado's Decorating*, Case No. 07 C 1865 (November 26, 2007) (awarding $450 per hour); *Valencia v. Domenic Vitro d/b/a Classic Creations Landscape*, Case No. 07 C 0551 (November 2, 2007) (awarding $450 per hour); *Cole v. DKMB, Inc.*, Case No. 06 C 0719 (August 27, 2007) (awarding $450 per hour). *See* Group Exhibit E.

### 3. Plaintiffs' counsel lodestar

Multiplying the hours that all attorneys and non-lawyer billing staff have worked on this case (and which remain after the exercise of billing judgment described above) by their respective hourly rates yields a lodestar figure of $94,977.50. (*See* Exhibit 1 of Exhibit B). This lodestar figure is entitled to a strong presumption of reasonableness. *See Hixon*, 2007 WL 4373111, at *2.

### C. No downward adjustment is warranted

Plaintiffs' request for $69,123.00 to compensate their attorneys for more than 232.9 hours and approximately one year worth of litigation and extensive settlement efforts and administration satisfies any conceivable standard of reasonableness. The amount requested is significantly lower than Plaintiffs' counsel lodestar. (*See* Exhibit 1 of Exhibit B). In effect, the request for fees incorporates any reasonable reduction in the number of lodestar hours and/or hourly rates that the Court may be inclined to consider. Further, as discussed below, numerous other factors weigh against any additional downward adjustment and, under

different circumstances, would weigh in favor of enhancement.

### 1. Results obtained

Lodestar may be adjusted based on "results obtained." *Hensley*, 461 U.S. at 434. However, because mandatory fee awards in FLSA cases are intended to "encourage[] the vindication of congressionally identified policies and rights[,]" courts frequently grant and uphold "substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Fegley*, 19 F.3d at 1134-35 (internal citation omitted); *see also Singer v. City of Waco*, 324 F.3d 813, 829-30 (5th Cir. 2003) (limited monetary success does not require a reduction in lodestar); *cf. Fields v. Luther*, 1988 WL 121791 at *3 (D. Md. July 12, 1988) (proportionality between the amount recovered and the amount of the attorney's fee awarded is not required).

The Defendants agreed to pay to up to $150,000.00 to resolve this matter. From this amount, a total of 5 collective members who chose to opt-in to this case will receive checks totaling $13,551.98 (*see* Exhibit D), which represents a significant amount of damages Plaintiffs might have recovered if successful at trial and on appeal. In addition, the settlement figure will pay all costs of settlement administration, costs and expenses of litigation, and attorney fees.

This result is substantial, especially in light of the complexity of Plaintiffs' claims; the difficulty of proving the number of off-the-clock overtime hours worked; the inherent risks of trial; and further risks of appeal.

### 2. Time and labor required

The Named Plaintiff first contacted counsel a little less than a year ago. As noted above, Plaintiffs' counsel and staff have worked in excess of 232.9 hours to bring claims against the

Defendants to a successful conclusion against experienced and qualified opponents. Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses. (*See* Exhibit B at ¶7). Plaintiffs' Counsel conducted extensive legal and factual research on the underlying merits of the potential class and collective action members' claims, the potential damages to which they may be entitled, and the propriety of collective and class action certification. (*Id.* at ¶8). Plaintiffs' Counsel also individually reviewed and analyzed extensive data produced by the Named Plaintiff as well as the Defendants including pay records, timesheets, emails, text messages and other relevant documents. (*Id.* at ¶9). Plaintiffs' Counsel estimated damages for the putative collective members based upon a number of different assumptions and scenarios. All of these tasks were performed at a high level, without compensation and with the risk of no compensation.

### 3. Novelty and difficult issues

This was not a run-of-the-mill wage and hour case. It presented difficult and complex issues of law and fact that required sophisticated investigation, analysis, research and strategizing. Namely, Plaintiffs had a difficult task proving certain work activities were indeed compensable. Thus, Plaintiffs expended great effort in developing strong, supportive evidence of common themes and arguments to support class and/or collective action certification.

### 4. Skill required to perform legal services properly

The difficulty and complexity of the issues in this case required high-level research, analysis and advocacy. The skill, resolve, and tenacity displayed by Plaintiffs' Counsel were particularly important given that Defendants were represented by skilled, experienced and resourceful attorneys.

### 5. Preclusion of other employment

The prosecution of this action consumed the attention and time of Plaintiffs' Counsel, sometimes totally to the exclusion of other matters. Plaintiffs' Counsel have an active legal practice and other endeavors they could have and would have pursued but for their commitment to this litigation. (*Id.* at ¶19).

### 6. Customary fee

As noted above, the hourly rates charged by Plaintiffs' Counsel and staff are comparable to rates charged by class action counsel in similar cases and have been accepted and approved in other contingent litigation. (*Id.* at ¶14).

### 7. Whether the fee is fixed or contingent

The fees in this case are contingent. All of the Plaintiffs are of modest means and would not have been able to obtain counsel to pursue their claims on a fixed-fee basis. Because the fee is contingent, Plaintiffs' Counsel bore the time, costs and out-of-pocket expenses of litigation without any compensation and with the risk of no compensation.

### 8. Time limitation imposed by clients or circumstances

No particular time limitations were imposed by Plaintiffs or circumstances.

### 9. Experience, reputation, and ability of attorneys

Plaintiffs' Counsel are highly-experienced, successful lawyers whose reputations for quality are among the highest in the wage and hour field. Plaintiffs' Counsel's firm resume is attached as Exhibit 2 of Exhibit B – Andrew C. Ficzko Declaration.

### 10. Undesirability of the case

The undesirability of this case is reflected by the fact that none of the other numerous local and national law firms that regularly file wage and hour actions intervened or filed separate action on behalf of any Plaintiffs. This lack of interest is understandable given the significant

legal, procedural and practical hurdles this case presented.

**11. Nature and length of professional relationship with clients**

There was no pre-existing relationship between Plaintiffs' Counsel and their clients in this case. However, Plaintiffs' Counsel developed a strong working relationship with the Named Plaintiff, who actively participated by communicating with Counsel along the way, suggesting areas and avenues of obtaining information, educating Plaintiffs' Counsel regarding Defendants' practices and procedures, participating in the process leading to the settlement, and crafting the settlement and proposed plan of allocation.

**12. Awards in similar cases**

Plaintiffs' Counsel have received fee awards in a number of comparable matters in pursuant of wages claims. For instance, *in Land v. Frontline Communications, et al*. Case No. 10-cv-7640 (N.D. Ill.), Plaintiffs' Counsel was awarded $98,502.67 in fees in settlement with one Defendant and $90,750.00 in settlement with another on behalf of a class of technicians. In addition, *in Ellenbecker v. North Star Cable Construction, Inc. et al*., Case No. 09-cv-7293 (N.D. Ill.), Plaintiffs' Counsel was awarded $54,450.00 in fees in settlement with one Defendant on behalf of a class of technician as well. See Group Exhibit F. Finally, Plaintiffs' Counsel's hourly rates are consistent with the most recent court-awarded hourly rates for legal services performed which was awarded in the First Judicial District of Pennsylvania in the matter of *Heba, et al. v. Comcast Corp., et al*., Case No. 000471 (April 6, 2016*)*. See Exhibit G. In *Heba*, the Court approved the following attorney rates: Ryan Stephan and Jim Zouras (senior partners) at a rate of $600.00, Andrew Ficzko (associate at the time) at a rate of $375.00, and legal assistants at a rate of $125.00. (Exhibit B at ¶15).

**13. Public purpose served**

Plaintiffs' success serves the purpose of the FLSA and state wage laws by vindicating rights these statutes were enacted to protect. It serves notice to employers that there is a cost for paying lip-service to their wage and hour obligations and that employers who fail to strictly adhere to federal and state wage laws do so at their peril.

In sum, an award of attorney fees in this case is mandatory. The amount requested, $69,123.00 for attorneys' fees and costs[7] is exceedingly reasonable in light of Plaintiffs' Counsel's lodestar, which significantly exceeds the request. (*See* Exhibit 1 of Exhibit B). Further, no downward adjustment is warranted in light of the results obtained, the benefits to Plaintiff, and all of the other pertinent factors that bear on such an award.

## CONCLUSION

For all the above reasons, the Parties respectfully request an order: (1) granting final approval of the Settlement Agreement; (2) approving a service award of $10,000.00 to the Named Plaintiff; (3) approving Plaintiffs' request of $69,123.00 in attorneys' fees and costs; (4) approving the $5,500.00 in administration fees and costs; and (5) incorporating the terms of the Settlement Agreement.

Dated: June 30, 2017                Respectfully submitted,

                                    *s/ Andrew C. Ficzko*
                                    Andrew C. Ficzko
                                    Ryan F. Stephan
                                    Stephan Zouras, LLP
                                    205 N. Michigan Avenue, Suite 2560
                                    Chicago, Illinois 60601
                                    Tel. 312-233-1550
                                    aficzko@stephanzouras.com
                                    *Attorneys for Plaintiffs*

---

[7] As noted above, the award of costs, as well as fees, is mandatory under the FLSA and IMWL. *See* 29 U.S.C. § 216(b); 820 ILCS § 105/4(a).

23

_s/ Larry Besnoff_
Larry Besnoff
Obermayer Rebmann Maxwell & Hippel LLP
CENTRE SQUARE WEST
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Tel. 215-665-3126
lb@obermayer.com
_Attorneys for Defendants_

**CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on June 30, 2017, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

*/s/ Andrew C. Ficzko*